UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MICHELLE LISIECKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>    v.<br><br>NCB MANAGEMENT SERVICES, INC.,<br><br>        Defendant. | Case No.: 20-cv-131<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chs. 421-427 (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Michelle Lisiecki is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from Plaintiff arose from an agreement or series of agreements to defer payment.

6. Defendant NCB Management Services, Inc. ("NCB") is a foreign corporation with its principal place of business located at One Allied Drive, Trevose, PA 19053.

7. NCB is engaged in the business of collecting debts. NCB collects debts on behalf of third parties, and NCB also purchases and receives assignment of consumer debts that are in default at the time NCB acquires them.

8. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

9. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS

2

197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

10. The primary purpose of NCB's business, and NCB's principal purpose, is the collection of consumer debts.

11. The "About" page on NCB's website states:

NCB Management Services, Inc. is a twenty-five-year-old provider of Accounts Receivable Management (ARM) and Call Center Management (CCM) solutions, as well as a respected national debt buyer. Over the past two decades, NCB has developed a substantial network of industry leading business partners in a wide variety of markets. Our goal is to provide our clients with the highest level of support, while improving both the efficiency and effectiveness of their business functions. By blending operational expertise, with the latest in new information systems and communication technology, NCB consistently achieves superior results.

https://www.ncbi.com/About/ (accessed: January 21, 2020).

12. Where a debt collector intends to attempt to collect a debt, the primary purpose of purchasing that debt is debt collection. *E.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 268 (3d Cir. 2019) ("As Barbato points out, Crown could buy debt for the charitable purpose of forgiving it, or it could buy debt for the purpose of reselling it to unrelated third parties at a profit. In both of those cases, the entity's 'principal purpose' would not be collection. But Crown does neither of those things."), *cert. denied sub. nom., Crown Asset Mgt. LLC v. Barbato*, 140 S. Ct. 245 (2019); *see also, Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt

3

buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

13. When attempting to collect debts owed to itself or third-parties, NCB uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

14. Upon information and belief, NCB by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that NCB has filed more than 60 lawsuits against Wisconsin consumers during the one-year period leading up to January 21, 2020. Upon information and belief, when NCB obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers. *See, e.g., NCB Management Services, Inc. v. Deanna Wheeler-Sanders*, Dane Cnty. Cir. Ct. Case No. 2019SC000526, Earnings Garnishment Notice *filed* Aug. 27, 2019 (Wis.).

15. NCB is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 916 F.3d 260.

16. NCB is also a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

17. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

18. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

21. NCB is a "debt collector" as defined in Wis. Stat § 427.103(3).

## FACTS

22. On or about October 16, 2019, NCB mailed a debt collection letter to Plaintiff regarding an alleged debt owed to NCB, with an "Original Creditor" of "Rise Financial, LLC D/B/A Rise Credit." A copy of this letter is attached to this Complaint as <u>Exhibit A</u>.

23. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred as the result of a short-term consumer loan used only for personal, family, or household purposes.

24. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

5

25. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

26. Upon information and belief, Exhibit A was mailed in connection with a payment plan that Plaintiff had previously executed with Defendant.

27. Exhibit A contains instructions for authorizing an electronic payment to NCB.

28. Exhibit A contains additional instructions for cancelling such electronic payments. Specifically, Exhibit A states:

> *Right to Cancel.* You may cancel this authorization by calling us toll free at 833-265-4873, Monday through Friday, 8:00 am to 5:00 pm (EST), or write us at P.O. Box 1099, Langhorne, PA 19047, or by email at cancel.payment@ncbi.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. You may also contact your account-holding financial institution for instructions on how to stop payment of regular transfers from your account.

29. Exhibit A states that a consumer may cancel any electronic payment up to three business days prior to the date the payment is scheduled to be made.

30. Exhibit A also states that "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call."

31. Exhibit A fails to explain, however, what happens with regard to the funds scheduled to be made through the electronic payment during the period of time intervening between a cancellation made via telephone and any subsequent written cancelation request.

32. Specifically, Exhibit A fails to explain whether such funds would be held in escrow or simply not transferred, and if not transferred, whether NCB reserves the right to transfer such funds should the consumer fail to submit the required written cancelation request.

33. Given the ambiguity of the representations contained in Exhibit A, the unsophisticated consumer may incorrectly assume that the funds subject to a scheduled electronic payment may be subject to any of the above-mentioned possibilities.

6

34. Upon information and belief, if a consumer cancels an electronic payment via telephone but then fails to submit a written request, NCB would not actually transfer such funds to NCB's account despite such failure.

35. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibit A is implicitly representing that it may transfer the funds if the consumer fails to submit a written request.

36. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," NCB thus threatens to take an action that it does not actually intend to take.

37. Approximately two months after sending the initial letter, on or about December 18, 2019, NCB sent another debt collection letter to Plaintiff via e-mail regarding the same alleged debt. A copy of this letter is attached to this Complaint as Exhibit B.

38. Upon information and belief, Exhibit B is also a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

39. Upon information and belief, Exhibit B is also form debt collection letter, used by NCB to attempt to collect alleged debts.

40. Exhibit B contains the same "Right to Cancel" information as provided by Exhibit A:

> *Right to Cancel.* You may cancel this authorization by calling us toll free at 833-265-4873, Monday through Friday, 8:00 am to 5:00 pm (EST), or write us at P.O. Box 1099, Langhorne, PA 19047, or by email at cancel.payment@ncbi.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. You may also contact your account-holding financial institution for instructions on how to stop payment of regular transfers from your account.

41. Plaintiff was confused and misled by Exhibit A and Exhibit B.

42. The unsophisticated consumer would be confused and misled by Exhibit A and Exhibit B.

43. Plaintiff had to spend time and money investigating Exhibit A and Exhibit B.

### *The FDCPA*

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med.*

*Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. Misrepresentations of the character, amount or legal status of any debt, or that abridge or threaten to abridge consumers rights injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 498 (7th Cir. 2018) (affirming district court's finding that consumer had standing to sue with respect to the debt collection letter purporting to require disputes raised under 15 U.S.C. § 1692g(a)(3) to be made in writing); *see also Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also*

10

*Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(5) specifically prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

49. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

50. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

51. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

52. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* Wis. Stat. §§ 425.301 through 425.311.

53. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

54. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stat. § 427.104.

55. The Act expressly authorizes injunctive or declaratory relief, authorizing individual actions to enjoin "any person who in making, soliciting or enforcing consumer credit transactions engages in . . . making or enforcing unconscionable terms or provisions of consumer credit transactions or false, misleading, deceptive, or unconscionable conduct in inducing customers to enter into consumer credit transactions." Wis. Stat. § 426.110(1) and (2).

56. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 . . . or by a violation of the federal consumer credit protection act . . . [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stat. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stat. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

### COUNT I – FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. By allowing a consumer to cancel an electronic payment by telephone but purportedly subsequently requiring a written cancellation after the scheduled date of such

13

transfer, Exhibit A and Exhibit B are confusing and misleading as to the disposition of the funds originally scheduled for an electronic payment in the time intervening between the telephonic and written requests to cancel such payment.

63. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibit A and Exhibit B implicitly threaten to transfer such funds and thus threaten to take an action that NCB does not intend to be taken and does not take in regular course.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – WCA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. By allowing a consumer to cancel an electronic payment by telephone but purportedly subsequently requiring a written cancellation after the scheduled date of such transfer, Exhibit A and Exhibit B are confusing and misleading as to the disposition of the funds originally scheduled for an electronic payment in the time intervening between the telephonic and written requests to cancel such payment.

67. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibit A and Exhibit B implicitly threaten to transfer such funds and thus threaten to take an action that NCB does not intend to be taken and does not take in regular course.

68. Defendant violated Wis. Stat. § 427.104(1)(L).

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of a Class consisting of: (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A or Exhibit B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) where the most recent letter was mailed between January 28, 2019 and January 28, 2020, inclusive, (e) and was not returned by the postal service.

70. The Class is so numerous that joinder is impracticable.

71. Upon information and belief, there are more than 50 members of the Class.

72. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and WCA.

73. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

74. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

75. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

76. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 28, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com